# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **FREDRICH GREEN, on behalf of himself and others similarly situated,** | **Civil Action No. 1:18-cv-1032** |
| **Plaintiff,** | |
| **vs.** | |
| **AMAZON.COM, LLC, AMAZON LOGISTICS, INC., and VALDIVIA LOGISTICS, LLC,** | |
| **Defendants.** | |

### FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT

1.      This FLSA Collective Action Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement") is entered into between Plaintiff Fredrich Green ("Plaintiff"), individually and on behalf of the Settlement Collective defined below, and Defendants Amazon.com, LLC, Amazon Logistics, Inc. (collectively "Amazon"), and Valdivia Logistics LLC, f/k/a CAV Logistics LLC d/b/a Cavalier Logistics LLC ("Valdivia") (collectively, "Defendants"), subject to the approval of the Court. Plaintiff and Defendants are referred to individually as a "Party" and together as the "Parties."

### RECITALS AND BACKGROUND

2.      Plaintiff, who worked as a Delivery Associate ("DA") in North Carolina, filed the above-captioned lawsuit in the United States District Court for the Middle District of North Carolina on December 18, 2018, alleging Defendants failed to pay its DAs overtime compensation when they worked more than 40 hours in a workweek in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

3.      In March 2019, the Parties agreed to stay Plaintiff's lawsuit so that they could participate in an alternative dispute resolution process in an effort to resolve Plaintiff's collective action claims. The parties filed a Motion to Stay Pending Private Mediation with the Court on March 14, 2019 (ECF No. 13), which the Court granted on April 24, 2019 (ECF No. 24.).

4.      On April 22, 2020, the Parties participated in a full day mediation before Stephen Sonnenberg of JAMS, an experienced wage and hour mediator. Prior to the mediation, Valdivia provided Plaintiff's Counsel with Valdivia's payroll data and timekeeping data, and Amazon provided its delivery data (referred to as "Rabbit" data) for DAs who were paid by Valdivia and delivered packages to customers of Amazon.com, which Plaintiff's Counsel reviewed and analyzed extensively.  The Parties engaged in numerous meet and confer sessions regarding the

facts and data prior to the mediation.

5.      As a result of the mediation and continued arm's length negotiations between March 2019 and June 2020, the Parties agreed to settle Plaintiff's claims according to the terms of this Settlement Agreement.

6.      Plaintiff's Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiff has considered: (a) the facts developed during the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiff has concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiff and the Settlement Collective Members to settle their claims against Defendants as set forth herein.

7.      Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Amazon further denies it is a joint employer of the DAs.  Defendants are entering this Agreement to eliminate the burden, risk, and expense of further litigation. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants or any of the Released Parties (as defined below) of any fault, liability, or wrongdoing, which Defendants expressly deny.

8.      The Parties recognize that Court approval of this Settlement is required to effectuate the Settlement, and the Settlement will not become operative until the Court grants approval of it and the Settlement Effective Date occurs.

9.      The Parties stipulate and agree that, for settlement purposes only, the requirements for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met with respect to the Settlement Collective Members as defined below. Should this Settlement not be approved, such stipulation to conditional certification shall become null and void and shall have no bearing on (or be admissible in connection with) the issue of whether conditional certification would be appropriate in a non-settlement context.

10.     In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows.

## **DEFINITIONS**

11.     The following terms used in this Agreement have the following meanings:

a.      "Action" means the above-captioned lawsuit.

b.      "Approval Order" means the Order approving the terms and conditions of this Agreement, as may be modified by the Court.

c.      "Check Cashing Period" means the period of 180 days after settlement checks are initially issued by the Settlement Administrator to Settlement Collective Members.

2

d.     "Court" means the United States District Court for the Middle District of North Carolina.

e.     "Defendants" means Amazon.com, LLC, Amazon Logistics, Inc. (collectively "Amazon"), and Valdivia Logistics LLC, f/k/a CAV Logistics LLC d/b/a Cavalier Logistics LLC ("Valdivia").

f.     "Defendants' Counsel" means Morgan, Lewis & Bockius LLP (for Amazon) and Ellis & Winters LLP (for Valdivia).

g.     "Gross Settlement Amount" means the sum of Two Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents ($212,500.00), which shall be the maximum amount Defendants shall pay to settle this Action as set forth herein, except that Defendants shall separately pay their own attorneys' fees and costs, settlement administration costs, and the employer's share of payroll taxes.

h.     "Named Plaintiff" or "Plaintiff" means Fredrich Green.

i.     "Net Settlement Amount" means the Gross Settlement Amount less: (i) Seven Thousand Five Hundred Dollars ($7,500.00) to Plaintiff Green for his efforts in bringing and prosecuting this matter and for his broader release of wage and hour claims in favor of Defendants ("Service Award"); and (ii) Plaintiff's Counsel's attorneys' fees not to exceed one-third (1/3) of the Gross Settlement Amount, plus Plaintiff's Counsel's out-of-pocket costs that are currently estimated to be $9,490; and (iii) a $5,000 Reserve Fund as defined and described herein. These amounts are subject to the Court's approval. The Net Settlement Amount shall include all payments to Settlement Collective Members.

j.     "Opt-In Plaintiffs" means individuals who as of the date of execution of this Agreement have filed an Opt-In Consent Form with the Court. There are a total of three (3) Opt-In Plaintiffs, including Plaintiff.

k.     "Parties" means Plaintiff and Defendants.

l.     "Plaintiff's Counsel" means Berger Montague PC and Willig, Williams & Davidson.

m.     "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator and funded by the Defendants for the purpose of holding the Gross Settlement Amount as well as funds paid by Defendants sufficient to enable the Settlement Administrator to pay the employer's share of payroll taxes and the Settlement Administrator's fees and costs, including those associated with Notice and distributing all approved amounts to the proper individuals.  Defendants agree that on the date of the Approval Order, one-half of the Gross Settlement Amount will begin earning interest of no less than 2%, which interest will be included in the payment made to the QSF upon funding.  The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's orders regarding approval. Interest, if any, earned on the QSF will become part of the Gross Settlement Amount.

n.     "Released Claims" means any and all Fair Labor Standards Act claims, and

3

state wage and hour claims that accrued to the Settlement Collective Members while working for Defendants at any time between August 22, 2018 through January 7, 2019, including, without limitations, including but not limited to claims under the FLSA, North Carolina state law, and Massachusetts state law, or any other federal, state or local wage and hour law, pertaining to the alleged failure to pay for all hours worked, claims for unpaid wages (including overtime compensation), claims for working through meal or rest periods, and related claims for liquidated damages, interests, penalties, fees or costs, that were or could have been asserted in the Lawsuit based upon the facts alleged in the operative complaint. The Released Claims shall be released upon the signing, cashing, or depositing of a Settlement Award check. Defendants agree that this Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release those FLSA claims; however, Defendants do not waive the right to assert other defenses to those claims regarding timeliness, scope and/or applicability of exemptions.

o. "Released Parties" mean Amazon.com, LLC, Amazon Logistics, Inc., and Valdivia Logistics LLC, f/k/a CAV Logistics LLC d/b/a Cavalier Logistics LLC, and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

p. "Relevant Time Period" means August 22, 2018 through January 7, 2019.

q. "Settlement Administrator" means CPT Group.

r. "Settlement Award" means the payment that each Settlement Collective Member shall be entitled to receive pursuant to the terms of this Agreement.

s. "Settlement Collective Members" means: Plaintiff, Opt-In Plaintiffs, and all current and former Delivery Associates who were paid by Defendant Valdivia to deliver packages for customers of Amazon.com in the United States between August 22, 2018 through January 7, 2019. There are approximately 196 Settlement Collective Members.

## RELEASES

12. **Settlement Collective Members' Released Claims:** In exchange for the consideration set forth in this Settlement Agreement, upon signing, cashing, or depositing a Settlement Award check, the Settlement Collective Members agree to release the Released Claims. Settlement Collective Members, to the fullest extent allowed by law, are prohibited from asserting any claims released by them in this Settlement, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Released Parties, based on claims released by them in this Settlement. The Notice of Settlement substantially in the form attached at Exhibit A will advise that, by signing, cashing, or depositing a Settlement Award

4

Check, the Settlement Collective Members further agree they will not opt-in, will withdraw any opt-in, and will dismiss this action or themselves from the action in actions where they are a claimant, plaintiff, or appellant, and will opt-out of those actions if they become aware of such actions. Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena or other process.

13. **Named Plaintiff's Released Claims**: In exchange for the consideration set forth in this Settlement Agreement, and in addition to the Released Claims, upon the Approval Order of the Court, Plaintiff agrees to release and discharge Defendants and all other Released Parties finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that Plaintiff has or may have against the Released Parties that arose prior to the date on which he executed this Agreement including without limitation any claims arising under the FLSA and any claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws, as well as any claims, whether in law or equity, known or unknown, against Released Parties relating to Named Plaintiff's employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1891 of the Civil Rights Act, the Family and Medical Leave Act, North Carolina Equal Employment Practices Act, North Carolina Persons with Disabilities Protection Act, North Carolina Civil Rights Law, North Carolina Lawful Products Use Law, North Carolina Hemoglobin/Genetic Information Anti-Discrimination Law, North Carolina Retaliatory Employment Discrimination Act, North Carolina Leave for Parent Involvement in Schools Law, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress.

Named Plaintiff acknowledges that he may have claims that are presently unknown based on actions that took place prior to the date he executes this Agreement and that the release of Named Plaintiff's Released Claims contained in this Settlement Agreement is intended to and will fully, finally, and forever discharge all claims against Defendants and the other Released Parties, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected their decision to enter this release. Named Plaintiff agrees that, although he may discover facts in addition to or different from those that are currently known or believed to be true with respect to Named Plaintiff's Released Claims, it is his intention to fully, finally, and forever settle and release any and all Named Plaintiffs' Released Claims, without regard to the subsequent discovery or existence of such additional or different facts.

Provided, however, that nothing in this Agreement prohibits Named Plaintiff from (1) filing a claim or charge with a federal, state or local administrative agency, or (2) reporting,

5

communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the Securities and Exchange Commission (the "SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendants, subject to the condition that once this Agreement becomes effective, Named Plaintiff may not receive a monetary award in connection with any such charge or complaint that is filed or is filed on Named Plaintiff's behalf with the EEOC or state or local fair employment agency. Named Plaintiff further agrees and acknowledges he has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to him as set forth in this Agreement are related to sexual harassment or sexual abuse.

## SETTLEMENT APPROVAL

14.     Named Plaintiff shall file an Unopposed Motion to Approve Settlement with the Court within fourteen (14) days following the execution of this Settlement Agreement, attaching a copy of this Agreement.

15.     The Motion to Approve Settlement will request that the Court approve the Settlement as a fair and reasonable resolution of a *bona fide* dispute.

## SETTLEMENT NOTICE AND IMPLEMENTATION

16.     Within thirty (30) calendar days after the Approval Order, Defendants shall electronically transfer the Gross Settlement Amount to the Settlement Administrator in the QSF.

a.     The Parties agree to the creation of a QSF and that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treas. Reg. §1.468B-1, 26 CFR § 1.468B-1, *et seq.*, and will be administered by the Settlement Administrator as such.

b.     With respect to the QSF, the Settlement Administrator shall:  (i) calculate, withhold, remit, and report each Settlement Collective Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendants for any penalty arising out of any error or incorrect calculation payroll taxes and/or interest with respect to any late deposit of the same; (ii) calculate and remit the employer's share of Employer Payroll Taxes for each Settlement Collective Member's share of all employer payroll taxes; (iii) satisfy all federal, state, and local income and other tax reporting, return, and filing requirements with respect to the QSF; and (iv) satisfy out of the QSF all taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF.  The fees, expenses, and costs incurred in connection with the opening and administration of the QSF and the performance of the Settlement Administrator's duties and functions as described in this Agreement will be paid separately as described herein.  These tax services, fees, costs and expenses shall be treated as and included in the costs of administering the QSF, which shall be paid by Defendants.

6

c. The Parties and the Settlement Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii).

d. The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. The Parties will require the Settlement Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF.

17. Within ten (10) business days after the Approval Order, Valdivia shall provide to Plaintiff's Counsel and the Settlement Administrator database Microsoft Excel file containing the names, last known addresses, last known telephone numbers (if any), last known email addresses (if any), social security numbers or tax ID numbers of each FLSA Collective Member. ("Collective List"). Prior to mailing the Settlement Awards, the Settlement Administrator shall use the National Change of Address Database to update any addresses on the Collective List.

18. At least five (5) business days prior to mailing, Plaintiff's Counsel shall provide the Settlement Administrator and Defendants' Counsel final settlement shares for each Settlement Collective Member, which shall be calculated pursuant to the objective formula set forth in Paragraph 21 utilizing the data previously provided by Defendants.

19. The Settlement Administrator shall be responsible for disbursing all Settlement Awards and preparing, printing, and mailing the Settlement Notice to the Collective Members.

20. The Settlement Administrator shall set aside Five Thousand Dollars ($5,000.00) of the QSF from the Gross Settlement Amount as a Reserve Fund (the "Reserve Fund") for the purpose of preserving these funds to account for disputed, belated, or unexpected payments to Settlement Collective Members after Settlement Awards have issued during the Check Cashing Period. Settlement Collective Members may contact the Settlement Administrator with questions regarding their settlement shares. There is a rebuttable presumption that Defendants' records are correct, but Settlement Collective Members may, should they disagree with Defendants' records, provide documentation to show contrary information by no later than the conclusion of the Check Cashing Period. Such a dispute shall be directed to the Settlement Administrator, who will notify all Counsel of the dispute and promptly provide Counsel with a copy of the records provided by the individual. All disputes arising under this paragraph must be resolved and reported no later than thirty (30) calendar days after the Check Cashing Period and any disputes not resolved to the satisfaction of all Counsel may be presented to the Court. The Reserve Fund shall be held by the Settlement Administrator for a period of (100) one hundred days after the Check Cashing Period. The Settlement Administrator. In the event that any funds remain in the Reserve Fund following this period, such funds shall be sent to Legal Aid of North Carolina, as a *cy pres* recipient agreed to by the Parties, subject to the Court's approval.

21. The following objective formula shall be utilized by Plaintiff's Counsel in calculation of the settlement shares:

i. $100 per Settlement Collective Member will be deducted from the Net

7

Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Settlement Collective Member so that each Settlement Collective Member receives at least $100 in exchange for their release in this Settlement Agreement.

ii. In addition to the $100 payment set out in (a) above, Settlement Collective Members shall receive *a pro rata* portion of the Net Settlement Amount as follows:

1. For each workweek during which the Settlement Class Member worked more than four (4) or more days during the Relevant Time Period, the Settlement Collective Member shall receive two (2) settlement shares, and if the workweek was performed in Massachusetts, the Settlement Collective Member shall receive three (3) settlement shares, in recognition of the additional penalties available under Massachusetts law.

2. The total number of settlement shares for all Settlement Collective Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award.

22. Subject to the Court's Approval Order, Named Plaintiff shall receive a Service Award of $7,500 for his efforts in bringing and prosecuting this matter and his broader release of claims in favor of Defendants. The Named Plaintiff shall be issued a Form 1099 for this payment, which shall be paid by the Settlement Administrator within five (5) business days after funding of the Gross Settlement Amount.

23. Subject to the Court's Approval Order, Plaintiff's Counsel shall receive attorneys' fees of one-third (1/3) of the Gross Settlement Amount, in compensation for all work performed to date as well as all work remaining to be performed in the Action. In addition, Plaintiff's Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court's Approval Order. The substance of Plaintiff's Counsel's request for attorneys' fees and costs is considered separately from the Court's consideration of fairness and reasonableness of the settlement of the Action, and the outcome of any proceeding the Court makes as to Plaintiff's Counsel's request for attorneys' fees and costs shall not terminate this Agreement.

a. The payments of attorneys' fees and costs shall be made on the date the Settlement Administrator mails Settlement Awards to Settlement Collective Members, as provided for in Paragraph 24.

b. The attorneys' fees and costs paid pursuant to this Agreement out of the Gross Settlement Amount shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in this Action on behalf

8

of any Settlement Collective Member, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of any Settlement Collective Member.

        c.     A Form 1099 shall be issued to Plaintiff's Counsel by the Settlement Administrator, and Plaintiff's Counsel shall be solely and legally responsible for paying any and all applicable taxes on the payment made to them

24.     Within five (5) business days of receipt of the final Settlement share calculations approved by the Parties, the Settlement Administrator shall mail all Settlement Awards to Settlement Collective Members along with a Notice of Settlement substantially in the form attached at Exhibit A, as approved by the Court. The Settlement Awards shall be checks that contain a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check the Settlement Collective Member agrees to opt in to this collective action, defined by its caption and release the Released Claims as follows:

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com, LLC, Amazon Logistics, Inc., Valdivia Logistics, LLC, and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Green v. Amazon.com, LLC, et al.*, 1:18-cv-1032 (M.D.N.C.). I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.

The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties.

25.     Fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered wages subject to the withholding of all applicable local, state, and federal taxes. The Settlement Administrator shall make the required withholdings and shall issue an IRS Form W-2 to each settlement Collective Member for these payments. Defendants shall pay the employers' side of taxes separate from the Gross Settlement Amount. The remaining fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered liquidated damages. The Settlement Administrator shall issue an IRS Form 1099-MISC to each Settlement Collective Member for these payments.

26.     All Settlement Award checks to Settlement Collective Members shall remain negotiable for 180 days from the date they are issued and shall be accompanied by a cover letter when they are sent to Settlement Collective Members. The Settlement Administrator shall send a reminder letter via U.S. mail and email to those who have not yet cashed their settlement check after 60 days, and may call those that have still not cashed their check to remind them to do so within the last 60 days of the Check-Cashing Period. Any amounts from uncashed settlement checks after the 180-day period will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against the Defendants.

27.     No person shall have any claim against Defendants, Plaintiff's Counsel, or Defendants' Counsel based on distribution or payments made in accordance with this Settlement Agreement.

## **MISCELLANEOUS**

28.     **No Retaliation.** Defendants will not take any adverse action against any Settlement Collective Member on the grounds that he/she is eligible to participate or does participate in the Settlement.

29.     **No Admission of Liability.** This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants of any fault, liability, or wrongdoing.

30.     **Defendants' Legal Fees.** Defendants' legal fees and expenses in this Action shall be borne by Defendants.

31.     **Effect of Non-Approval.** If the Court does not approve the Settlement as provided herein, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and, if feasible, to resubmit the settlement for approval within thirty (30) days. If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, then any Party may void this Agreement; at that point, the Parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in the Action.

32.     **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement.

33.     **Amendment or Modification.** This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

34.     **Entire Settlement Agreement.** This Agreement and the exhibit hereto constitutes the entire Agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral are expressly superseded hereby and are of no further force and effect.  No rights hereunder may be waived except in writing.

35.     **Authorization to Enter Into Settlement Agreement.** The Parties warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement. In the event that the Parties are unable to reach resolution on

the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance the mediator, Stephen Sonneberg, to resolve such disagreement.

36.  **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of Plaintiff, Defendants, and the Settlement Collective Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize. The Parties hereto represent, covenant and warrant they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

37.  **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile, email, and electronic signature. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

38.  **No Signature Required by Collective Members.** Only the Named Plaintiff, Defendants, and the respective counsel of each of them will be required to execute this Settlement Agreement. The Settlement Notice will advise all Settlement Collective Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Collective Member.

39.  **Cooperation and Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties. The Parties agree the terms and conditions of this Agreement were negotiated at arm's-length and in good faith by the Parties and reflect a settlement reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

40.  **Governing Law.** This Settlement Agreement shall be governed by and interpreted according to North Carolina law.

41.  **Jurisdiction of the Court.** The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for this purpose.

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:** _____     Date: __6/30____, 2020
Fredrich Green


**APPROVED AS TO FORM BY PLAINTIFF'S COUNSEL:**

_____     Date:__08Ø30___, 2020
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
Krysten Connon
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103

_____     Date: __06/30___, 2020
Ryan Allen Hancock
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut Street 24th Floor
Philadelphia, PA 19103


**DEFENDANTS:** _____     Date: _____, 2020
Amazon.com, LLC


_____ Date: _____, 2020
Amazon Logistics, Inc.


_____     Date: _____, 2020
Valdivia Logistics LLC

12

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:**  _____  Date: _____, 2020
Fredrich Green

**APPROVED AS TO FORM BY PLAINTIFF'S COUNSEL:**

_____  Date: _____, 2020
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
Krysten Connon
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103

_____  Date: _____, 2020
Ryan Allen Hancock
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut Street 24th Floor
Philadelphia, PA 19103

**DEFENDANTS:**  _____  Date: _July 14, 2020___, 2020
Amazon.com, LLC

_____  Date: _July 14, 2020___, 2020
Amazon Logistics, Inc.

_____  Date: _____, 2020
Valdivia Logistics LLC

12

DocuSign Envelope ID: A52AB218-4B5B-45FD-937D-F8AED2E6E32F

**APPROVED AS TO FORM BY AMAZON'S COUNSEL:**


/s/ Stephanie L. Sweitzer                    Date: ___July 15___, 2020
_____
Stephanie Sweitzer
Meredith E. Riccio
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601


**APPROVED AS TO FORM BY VALDIVIA'S COUNSEL:**


_____          Date: __ _____, 2020
Kelly Margolis Dagger
ELLIS & WINTERS LLP
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612

13

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:** _____     Date: _____, 2020
                  Fredrich Green


**APPROVED AS TO FORM BY PLAINTIFF'S COUNSEL:**

_____     Date: _____, 2020
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
Krysten Connon
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103


_____     Date: _____, 2020
Ryan Allen Hancock
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut Street 24th Floor
Philadelphia, PA 19103


**DEFENDANTS:** _____     Date: _____, 2020
                   Amazon.com, LLC


_____Date: _____, 2020
Amazon Logistics, Inc.


_____     Date: July 8th , 2020
Valdivia Logistics LLC

12

**APPROVED AS TO FORM BY AMAZON'S COUNSEL:**

_____        Date: _____, 2020
Stephanie Sweitzer
Meredith E. Riccio
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601


**APPROVED AS TO FORM BY VALDIVIA'S COUNSEL:**

_____        Date: __July 8___, 2020
Kelly Margolis Dagger
ELLIS & WINTERS LLP
4131 Parklake Avenue, Suite 400
Raleigh, NC 27612

13

# EXHIBIT A

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **FREDRICH GREEN, on behalf of himself and others similarly situated,**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**AMAZON.COM, LLC, AMAZON LOGISTICS, INC., and VALDIVIA LOGISTICS, LLC,**<br><br>    **Defendants.** | **Civil Action No. 1:18-cv-1032** |

## NOTICE OF COLLECTIVE ACTION SETTLEMENT
## AND SETTLEMENT AWARD

TO: NAME
   ADDRESS
   ADDRESS

*The Court authorized this Notice of Collective Action Settlement and Settlement Award check. This is not a solicitation. This is not a lawsuit against you, and you are not being sued.*

### PLEASE READ THIS NOTICE CAREFULLY.

| |
|---|
| **1.  Why Should You Read This Notice?** |

You received this Notice of Settlement ("Notice") either because you 1) previously completed an Opt-in Consent Form to join this case, or 2) you did not previously join this case but the records of Amazon.com, LLC ("Amazon.com"), Amazon Logistics, Inc. ("Amazon Logistics"), and/or Valdivia Logistics, LLC ("Valdivia") (collectively, "Defendants") show you performed work as a Delivery Associate and were paid by Defendant Valdivia to deliver packages to customers of Amazon.com in the United States between August 22, 2018 through January 7, 2019 ("Settlement Collective Members").

The parties to the lawsuit agreed to a binding settlement of this action, which alleges that Settlement Collective Members should have been paid for all hours worked, including overtime compensation, in addition to their day rate, when they worked more than forty (40) hours per week. On [DATE], 2020, the Court approved the settlement as fair and reasonable.

**This Notice explains the terms of the settlement and your right to your Settlement Award, which is enclosed with this Notice.**

| **2.** | **What is this Lawsuit About?** |

This lawsuit alleges that individuals who work or have worked as Delivery Associates and who were paid by Defendant Valdivia to deliver packages to customers of Amazon.com in the United States between August 22, 2018 through January 7, 2019 were paid on a day rate basis without overtime compensation, and were not paid for all hours worked, including overtime compensation to which they were entitled under the law. Defendants deny that they failed to pay these individuals the full amount of compensation they were owed, deny any wrongdoing, and deny any and all liability and damages to anyone with respect to the allegations made in the lawsuit.

| **2.** | **How Is My Settlement Award Calculated?** |

Under the terms of the Settlement Agreement, Defendants have agreed to pay Two Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents ($212,500.00) (the "Gross Settlement Amount"). The Gross Settlement Amount includes amounts to cover: (i) Seven Thousand Five Hundred Dollars ($7,500.00) to Plaintiff Green for his efforts in bringing and prosecuting this matter and for his broader release of claims in favor of Defendants ("Service Award"); (ii) Plaintiff's Counsel's attorneys' fees in the amount of one-third (1/3) of the Gross Settlement Amount (*i.e.*, $70,833.33), plus Plaintiff's Counsel's out-of-pocket costs that are $9,490; and (iii) a Reserve Fund of Five Thousand Dollars ($5,000.00) to account for disputes by Settlement Collective Members After deductions of these amounts, what remains of the Gross Settlement Amount (the "Net Settlement Amount") has been divided into monetary Settlement Awards to the Settlement Collective Members.

**Your Settlement Award check is enclosed. Please note that your check is valid and negotiable for 180 days and will automatically expire on [DATE]. Therefore, please remember to cash or deposit your check AS SOON AS POSSIBLE.** After this expiration date, any uncashed remaining monies will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against the Defendants.

Your Settlement Award was calculated based on the payroll records submitted by Defendants. Specifically, the settlement payments were calculated as follows:

> The amount of $100 was allocated to each Settlement Collective Member, so every person receives at least $100 in exchange for his/her release in this Settlement Agreement. In addition to the $100 payment, each Settlement Collective Member received *a pro rata* portion of the Net Settlement Amount, calculated as follows:

> a. For each workweek between August 22, 2018 through January 7, 2019 during which you worked four (4) or more days per week, you received two (2) settlement shares, or three (3) settlement shares if you performed the work in Massachusetts.

> b. The total number of settlement shares for all Settlement Collective Members was added together and the resulting sum was divided into the Net Settlement Amount to reach a

16

per share dollar figure. That figure was then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award.

If you have questions about the amount of your Settlement Award, you may contact the Settlement Administrator at the contact information below and must submit any disputes by **[DATE]**.

Fifty percent (50%) of your payment represents back wages, and 50% represents liquidated damages. The Settlement Administrator will issue you an IRS Form W-2 for 50% of this payment and an IRS Form 1099 for the other 50% of this payment. Neither the Settlement Administrator nor the Parties can provide you with any tax advice. You should contact your accountant or tax related advisors for any questions about taxes you may owe on these amounts.

By depositing or cashing your Settlement Award check, you release Defendants; their parent companies, subsidiaries, affiliates, business units, members, shareholders; and their predecessors and successors, officers, directors, agents, employees, and assigns of all Fair Labor Standards Act ("FLSA") claims as well as claims under North Carolina state law, and Massachusetts state law, or any other federal, state or local wage and hour law, that accrued while working for Defendants at any time between August 22, 2018 through January 7, 2019, including, without limitations, all FLSA claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses ("Released Claims").

The Released Claims will be effective upon signing, cashing, or depositing your Settlement Award check. To the fullest extent allowed by law, by depositing or cashing your Settlement Award check, you are prohibited from asserting any Released Claims, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Released Parties based on the Released Claims. You also agree to not opt-in, withdraw any opt-in, and dismiss any action or dismiss yourself from any action where you are a claimant, plaintiff, or appellant against the Released Parties. You also agree to opt-out of any actions if you become aware of such actions against Released Parties. This prohibition does *not* prevent you from testifying in any legally compelled proceeding through service of a subpoena or other government or legal process.

If you do not deposit or cash your Settlement Award check, you will not release any claims against Defendants or the Released Parties.

Defendants agree that this Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver, or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release those FLSA claims; however, Defendants do not waive the right to assert other defenses to those claims regarding timeliness, scope, and/or applicability of exemptions.

17

**4. Who Are The Attorneys Representing Plaintiff And The Settlement Collective?**

Plaintiff and the Settlement Collective are represented by the following attorneys:

Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
Krysten Connon
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
(215) 875-3033
kconnon@bm.net

Ryan Allen Hancock
**WILLIG, WILLIAMS, & DAVIDSON**
1845 Walnut Street 24th Floor
Philadelphia, PA 19103

**5. How Will the Attorneys for the Settlement Collective Be Paid?**

You do not have to pay the attorneys who represent the Settlement Collective separately. The Court approved an attorneys' fee and cost payment to Plaintiff's Counsel in the amount of one-third (1/3) of the Gross Settlement Amount (*i.e.*, $70,833.33), plus out of pocket costs incurred by Plaintiff's Counsel in litigating this action.

**6. Who May I Contact If I Have Further Questions?**

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator at the telephone number or email address listed below or Plaintiff's Counsel listed above. Please refer to the Amazon/Valdivia Settlement.

*Amazon/Valdivia Overtime Settlement*
[INSERT]
[INSERT]
[INSERT]

This Notice only summarizes the lawsuit, the settlement and related matters. For more information, you may inspect the Court's files at the Office of the Clerk located at the United States District Court for the Middle District of North Carolina, L. Richardson Preyer Courthouse, 324 W. Market Street, Greensboro, NC 27401-2544, from 8:00 a.m. to 5:00 p.m., Monday through Friday.

18